### MAHONEY v. NEW YORK CENT. & H. R. R. Co.

*(Supreme Court, General Term, Fifth Department. June, 1892.)*

INJURY TO RAILROAD EMPLOYE—DEFECTIVE APPLIANCES—NONSUIT.

Where the evidence in behalf of plaintiff tended to show merely that the death of deceased, for which damages were sought, was occasioned by his being crushed between two cars which he was attempting to couple, because of the absence of several iron plates from the drawhead on one of them, a nonsuit should have been ordered, it being incumbent on plaintiff to show that defendant had notice or knowledge of the defect, or was negligently ignorant of it.

Appeal from special term, Niagara county.

Action by Mary Mahoney, administratrix of Daniel H. Mahoney, deceased, against the New York Central & Hudson River Railroad Company. From a judgment for plaintiff, and an order denying a motion for a new trial, defendant appeals. Reversed.

Argued before DWIGHT, P. J., and MACOMBER and LEWIS, JJ.

*Charles A. Pooley*, for appellant. *Richard Crowley*, for respondent.

LEWIS, J. The deceased was in the defendant's employ as a brakeman upon a freight train at the time he received the injuries which caused his death. On the morning of the 15th of April, 1890, he left the city of Rochester upon a freight train for the city of Buffalo, by way of Albion and Lockport. At the village of Albion there was attached to the train 11 cars loaded with stone for Buffalo. The deceased coupled these cars onto the train. When the train arrived at Lockport, he uncoupled the stone cars taken on at Albion, and took out of the train some cars ordered left at Lockport. In attempting to again couple on the Albion cars, the deceased was caught between the bumper of one of the cars and the drawhead of the other car, and was crushed so that he died in a short time. Upon investigation it was found that the drawhead on the end of the stone car which the deceased had coupled onto the train at Albion, and which he was again attempting to couple onto the other cars at Lockport when he was injured, was out of order. Forming part of this drawhead as originally constructed were four iron washers or

plates. Each of these plates was about two inches in thickness. There was an iron rod forming part of the drawhead, which passed through these plates, and was attached to a timber under the car. The office of the plates was to prevent the drawhead from being forced too far under the car when it should come in contact with the drawhead of another car being coupled to it. These plates were found to be missing from the rod. The result was when the two sections of the train came together the defective drawhead was forced so far under the car as to permit the two cars that were being coupled to come so near together as to crush and kill the deceased, he having stepped in between the cars to effect the coupling. It is somewhat doubtful if the plaintiff proved the deceased free from negligence contributing to his injuries. Assuming, however, that the jury was justified in finding the deceased free from negligence contributing to his injuries, we think a new trial must be granted, because of the failure of the plaintiff to establish that the defendant's negligence caused the death of the intestate. When the plaintiff rested her case, the only evidence she had adduced which it can be claimed tended to show negligence on the part of the defendant was that the drawhead was found immediately after the accident to be out of order as stated. There was no evidence showing or tending to show when or how the plates mentioned got off the rod. Mahoney had that same afternoon, at the village of Albion, coupled this same drawhead, which was found to be out of order at Lockport, to the train. If it was then out of order, it was his duty to immediately report it to the conductor of the train. It is a reasonable inference that the plates were in their proper place when Mahoney effected the coupling at Albion, and, if so, they must have been forced off after the coupling was effected at Albion that afternoon. These plates were subjected to the severe strain of drawing 11 heavily loaded cars. The car originally had a drawhead at each end, constructed alike. The plates upon the drawhead at the other end of this crippled car were found in good condition after the accident.

The foregoing is a brief statement of the evidence adduced by the plaintiff, when she rested her case, and the defendant moved for a nonsuit. The proof of these facts, we think, did not throw upon the defendant the burden of showing how the defect in the drawhead occurred. 2 Thomp. Neg. p. 1053: "In an action by an employe against his employer, for injuries sustained by the former in the course of his employment, from defective appliances, the presumption is that the appliances were not defective, and, when it is shown that they were, then there is a further presumption that the employer had no notice or knowledge of this fact, and was not negligently ignorant of it. Therefore, in such actions, the *onus probandi* is upon the plaintiff to negative these presumptions in order to make out a *prima facie* case." It is stated in *De Graff* v. *Railroad Co.*, 76 N. Y. 125, that "an employe in the service of a railroad corporation assumes the risks and dangers incident to the business in which he is engaged, and, while the company is bound to furnish suitable and safe machinery and appliances for his use, having done so it is not liable for an injury resulting from their breaking or failure, unless it is shown that the corporation has been guilty of negligence in regard thereto." To the same effect are *Painton* v. *Railway Co.*, 83 N. Y. 12, and *Railway Co.* v. *Troesch*, 68 Ill. 546. The authorities referred to by the respondent's counsel as holding a different doctrine were cases of injuries to passengers, where a very different doctrine obtains. The defendant's motion for a nonsuit at the close of plaintiff's case being denied, the defendant introduced evidence tending to show that it was the duty of a brakeman to report to his conductor any defect he might at any time find in the cars of a train, and that the deceased did not report this drawhead as out of condition. This defective car was not owned by the defendant, but was being used by it on this occasion. It was taken into the defendant's repair shop at Rochester on the 6th of March, 1890. One of its draft timbers being out of order, it was bolted up. The car was other-

wise in good repair at that time. After being thus repaired it was sent east to Lyons, and delivered to the Fall Brook Railroad Company. It returned on the 7th of April, and passed through Rochester on to Albion. As it passed through Rochester it was inspected by a corps of inspectors employed by the defendant in that city, and was not reported out of order. Had it been out of condition, it was the duty of the inspectors to thus report it. When it came into defendant's use it was accepted by the defendant's inspectors as in good condition. It was four or five years old. This car, with others, was taken from Rochester to Albion on the 7th day of April, 1890, and was there loaded with stone for Buffalo. It remained in Albion until it was taken on the day in question, with 10 other cars loaded with stone, to Buffalo. To discover the absence of these plates, it was necessary to look under the car. Assuming that the burden of proof was upon the defendant to show that the car had been properly inspected, and was in good condition when taken at Albion, it must be held, we think, that it furnished the requisite evidence to prove that it was there in good condition. It was, as we have seen, inspected at Rochester when on its way to Albion. It was there loaded with stone, and was apparently in good condition when coupled to the train at Albion for Buffalo the day of the accident. The drawhead in question being subjected to the strain of drawing the 11 heavily loaded cars, the only reasonable conclusion is that these plates were, by this severe strain, crushed, or in some way forced off the rod. No other explanation of the defect would seem to be justified by the evidence. We find nothing in these facts justifying the jury in holding that the defendant was guilty of negligence. The respondent suggests that it was the duty of the conductor of the train to examine cars, and that he neglected his duty in that regard on this occasion. Conductors as well as brakemen are expected to keep a general supervision of their trains, to see that crippled cars are cared for, and are not used when in a dangerous condition. The conductor testifies that he performed his duty in that regard on this day in question, and there was no evidence contradicting his testimony. But if a conductor or brakeman neglect his duty in keeping watch of cars, and a coemploye on the train is injured in consequence of such neglect, he would have no cause of action against the company, for it would be the negligence of a coemploye that caused the accident. We think the plaintiff failed to make out a cause of action against the defendant, and that she should have been nonsuited or a verdict directed against her, and that the judgment and order appealed from should be reversed, and a new trial granted, with costs to abide the event. All concur.